UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN ALOISIO, *as Executor of the
Estate of Elizabeth Aloisio, Deceased,*

                          Plaintiff,

                -v.-

STIFTUNG AKTION
KNOCHENMARKSPENDE BAYERN,

                          Defendant.

25 Civ. 7997 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

Elizabeth Aloisio passed away after a bone marrow transplant intended to cure her leukemia went tragically awry.  Through a German stem cell database foundation, by way of the National Marrow Donor Program ("NMDP") in Minnesota, Ms. Aloisio had secured what she thought was a life-saving match with a donor.  But after her doctors in New York administered the transplant, Ms. Aloisio learned that a labeling error had caused her to receive the wrong cells.  A painful battle with graft-versus-host disease ("GVHD") ensued, and she succumbed to her illnesses a year later.

Ms. Aloisio's brother, Plaintiff John Aloisio, brought this action on her behalf against the stem cell database foundation, Stiftung Aktion Knochenmarkspende Bayern ("AKB" or "Defendant"),[2] alleging claims of, *inter*

---

[1]     Ty Greenberg, a rising second-year student at New York University School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

[2]     Plaintiff filed his complaint against AKB Foundation and AKB Stiftung Aktion Knochenmarkspende Bayern.  (Dkt. #1-1).  Upon consent of the parties, the Court

*alia,* negligence and wrongful death under New York common law.  Before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(5) for insufficient service of process.  For the reasons set forth below, the Court grants Defendant's motion and dismisses all claims against it.

**BACKGROUND**[3]

**A.    Factual Background**

   **1.    Ms. Aloisio Is Diagnosed with Leukemia, Locates a Stem Cell Donor, and Is Infused with the Wrong Stem Cells**

In October 2018, Ms. Aloisio was diagnosed with leukemia.  (Compl. ¶ 7). Her physician recommended that she receive a stem cell transplant, initiating a search for possible donors.  (*Id.*).  The NMDP worked with international partners, including German-based donor registry Zentrale Knochenmarkspender-Register fuer die Bundesrepublik Deutschland ("ZKRD"),

---

amended the case caption to name only Stiftung Aktion Knochenmarkspende Bayern as Defendant.  (Dkt. #22).

[3]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1-1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  While Plaintiff requests, without supporting authority, that the Court discount the Declaration of Prof. Ernst Holler ("Holler Decl." (Dkt. #15)) because "the words of interested parties should not be allowed to obviate the discovery process and foreclose plaintiff's claims" (Pl. Opp. 20-21), the Court also relies, as appropriate, on this declaration filed in support of Defendant's motion to dismiss, and which declaration was uncontroverted in Plaintiff's opposition, *see MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (explaining that on a Rule 12(b)(2) motion, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits" (internal quotation marks and citation omitted)); *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 83, 86 (2d Cir. 2013) (per curiam) (clarifying that, on a Rule 12(b)(2) motion, a district court may "consider[ ] materials outside the pleadings" such as "sworn declarations" so long as court's ultimate inquiry remains "whether [plaintiff] ha[s], through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction notwithstanding any controverting presentation by [defendant]" (internal quotation marks and citation omitted)).

2

to find a donor for Ms. Aloisio. (*Id.* ¶¶ 7, 11). ZKRD contacted Defendant, which, alongside its subsidiary Bayerische Stammzellbank GGMBH ("BSB"), located a near-perfect match. (*Id.* ¶¶ 11, 14). BSB subsequently collected and sent the blood products to New York-Presbyterian Hospital/Weill Cornell Medical Center for transfusion. (*Id.* ¶ 14; Holler Decl. ¶¶ 6(p), 9). At all relevant times, Defendant was aware that the shipment was headed to New York for the benefit of Ms. Aloisio. (Compl. ¶ 16).

BSB did not, in fact, ship the correct product to New York. Rather, because of a "labelling error," Ms. Aloisio was infused with the "wrong" stem cells — those of an imperfect match — in January 2019. (Compl. ¶¶ 17, 25). As a result, Ms. Aloisio developed severe GVHD, and "suffered from worsening fevers, vomiting, dizziness, pain, diarrhea, infections, pneumonia, and a long list of other symptoms," rendering her "too ill to receive a second transplant from a suitable donor." (*Id.* ¶¶ 26-27). After a year of suffering, Ms. Aloisio died in January 2020. (*Id.* ¶ 28).

### 2. Defendant AKB

Defendant is a German stem cell donor network with an "expansive donor registry" based in Gauting, Germany. (Compl. ¶¶ 8, 56). It is a "non-profit foundation, … dependent on donations to operate," with fewer than twenty-five employees and operations limited exclusively to Germany. (Holler Decl. ¶¶ 4-5, 14, 36). When Defendant receives a request from ZKRD, it performs "confirmatory typing" on a potential donor in its database, which consists of "examining the donor's tissue characteristics" and "ensur[ing] that

3

the potential donor does not have infections[.]"  (*Id.* ¶ 6(g)-(h)).  Where

Defendant finds a suitable donor in its database, it makes a request to BSB to

secure stem cells from the donor.  (*Id.* ¶ 6(*l*)).  Defendant did not

"manufacture," "distribute," "possess, inspect, touch, observe, or label any

stem cell donations for Ms. Aloisio[,]" nor does it provide such services for any

patient.  (*Id.* ¶¶ 5, 6(p)); *but see* Compl. ¶ 9 ("AKB/BS[B] was the company

responsible for collecting, labelling and preparing the stem cells for transport to

New York[.]")).  And Defendant only receives remuneration from ZKRD for its

confirmatory typing services.  (Holler Decl. ¶ 11; *but see* Compl. ¶ 13 (alleging

"AKB/BSB received compensation in excess of €30,000" for the stem cells

provided to Ms. Aloisio)).

Plaintiff alleges that Defendant "has organized several thousand

transplantations," including fifteen in New York between 2017 and 2023.

(Compl. ¶ 8; *id.* ¶¶ 37-51 (listing shipments); *but see* Holler Decl. ¶ 12 ("AKB

has never sent any donor stem cells to New York, much less ship donor stem

cells to New York on many occasions from 2017 through 2023[.]")).  However,

according to Defendant, it has "no control over where in the world the stem cell

donations are requested or ultimately implanted if a match is found."  (Holler

Decl. ¶ 6(j)).

### 3.    Plaintiff Sues in New York State Court

Plaintiff initially brought suit in New York State Supreme Court against

AKB, BSB, and several other defendants.  In November 2020, Plaintiff

4

voluntarily dismissed AKB from the action.  (Dkt. #13-2).[4]  BSB moved to dismiss the complaint against it for lack of personal jurisdiction, which motion the trial court denied in August 2021.  *See Aloisio* v. *N.Y.-Presbyterian/Weill Cornell Med. Ctr.,* 166 N.Y.S.3d 519, 519 (1st Dep't 2022) (summarizing lower court procedural history).  The First Department reversed, finding that there was no jurisdiction over BSB under C.P.L.R. § 302(a)(1) or (3)(ii).  *Id.*  As relevant here, the court found that BSB "did not engage in a regular course of conduct, nor did it purposefully avail itself of the privilege of conducting activities within New York State and its contacts with decedent's physicians and transplant center were responsive in nature."  *Id.* (citations omitted).  The court further noted that BSB "was reimbursed with a set sum by a German entity," and so there was "no evidence that BSB derived substantial revenue from the transaction or from New York, where it has no offices, employees, agents, marketing, registrations, or presence."  *Id.*  The court denied Plaintiff's request for jurisdictional discovery as "pure speculation."  *Id.* at 520.

Plaintiff's motion for leave to appeal to the New York Court of Appeals was denied in April 2023.  *Aloisio* v. *N.Y.-Presbyterian/Weill Cornell Med. Ctr.,* 39 N.Y.3d 911, 209 (2023) (unpublished table decision).  The state action is still ongoing as against non-AKB/BSB defendants.  (*See* Def. Br. 23).

---

[4]      At this time, Defendant was still improperly named as "AKB Foundation."

**B.      Procedural Background**

Plaintiff commenced this action by filing a complaint in New York State Supreme Court on March 19, 2024.  (Dkt. #1-1).  Defendant removed the case to this Court on September 26, 2025.  (Dkt. #1).

On October 3, 2025, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss for lack of personal jurisdiction and failure to timely serve (Dkt. #4), to which Plaintiff replied on October 10, 2025 (Dkt. #5).  The Court then dispensed with its typical requirement of a pre-motion conference and set a briefing schedule.  (Dkt. #10).  Defendant filed its motion to dismiss on November 21, 2025.  (Dkt. #11).  Plaintiff filed its opposition on January 9, 2026.  (Dkt. #19).  Defendant filed its reply in further support of its motion on February 4, 2026.  (Dkt. #24).

**DISCUSSION**

**A.      Applicable Law**

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  "A plaintiff must establish the court's jurisdiction with respect to each claim asserted[.]"  *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal quotation marks and citation omitted).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by

6

pleading in good faith, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam).  Even then, the court should "not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citations omitted).

A court may consider materials beyond the pleadings in resolving a Rule 12(b)(2) motion, but it must credit the plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[ ]." *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks and citation omitted).

A district court deciding a motion to dismiss for lack of personal jurisdiction engages in a two-part analysis.  *First*, it considers whether the law of the forum state — here, New York — provides a statutory basis for personal jurisdiction.  *See Licci*, 732 F.3d at 168.  *Second*, the court examines whether

its exercise of personal jurisdiction "comports with due process protections established under the United States Constitution." *Id.*[5]

## B.   The Court Lacks General Jurisdiction over Defendant

For good reason, Plaintiff does not argue in his Opposition that Defendant is subject to general jurisdiction in New York.  Aside from exceptional cases, a corporation is subject to general jurisdiction only where it is formally incorporated or maintains its principal place of business.  *See Gucci Am., Inc.* v. *Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014).  Plaintiff does not allege that Defendant is incorporated in New York and acknowledges that its principal place of business is Gauting, Germany.  (Compl. ¶ 56).  Moreover, this is far from an exceptional case, as Defendant clearly lacks "continuous and systematic" contacts that would render it "essentially at home" in New York.  *Gucci*, 768 F.3d at 135 (holding that defendant's forum activities "'plainly do not approach' the required level of contact" for general jurisdiction despite

---

[5]   In addition to its personal jurisdiction argument, Defendant also argues that dismissal is required under Rule 12(b)(5) for insufficient service of process.  (Def. Br. 25-27). Plaintiff requested in May 2024 that the time for service be extended until November 2024; in February 2025, the Court granted an extension to June 2025.  (Dkt. #1-2, 1-4).  Plaintiff, however, did not serve Defendant until August 28, 2025.  (Dkt. #1-6). Where, as here, "Plaintiff's only attempt at service occurred prior to removal of the case from New York state court, the Court analyzes whether service was proper under the relevant provisions of New York law." *Di Pompo* v. *Mendelson*, No. 21 Civ. 1340 (CS), 2022 WL 1093500, at *2 (S.D.N.Y. Apr. 7, 2022).

Because the Court dismisses the complaint under Rule 12(b)(2), it declines to reach the Rule 12(b)(5) argument as moot.  Nonetheless, the Court would dismiss as well under Rule 12(b)(5) because Plaintiff has not shown that time for service should be retroactively extended for "good cause" or "in the interest of justice."  C.P.L.R. § 306-b. Plaintiff's Opposition does not establish good cause for the delay.  *See* C.P.L.R. § 306-b commentary (LexisNexis) ("Unreasonable delays in effecting service will not be countenanced.").  And, because this Court dismisses on Rule 12(b)(2) grounds in any event, extending time to serve would not further the interests of justice.

having in-forum branch offices (quoting *Daimler AG* v. *Bauman*, 571 U.S. 117, 139 n.19 (2014))).

## C.    The Court Lacks Specific Jurisdiction over Defendant

New York's long-arm statute, C.P.L.R. § 302(a), sets forth various bases on which a court may exercise specific personal jurisdiction over a non-domiciliary:

(a)     Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

9

C.P.L.R. § 302(a).  As applied to the instant case, the questions before the Court are whether Defendant has (i) transacted business within New York or contracted anywhere to supply goods or services in the state, (ii) committed tortious acts within New York, or (iii) committed tortious acts outside New York that caused injury in New York.  (*See* Pl. Opp. 13-19 (arguing that this Court has jurisdiction pursuant to C.P.L.R. § 302(a)(1), (2) and (3))).

> **1.    Plaintiff Has Failed to Sufficiently Allege That Defendant Transacts Business in New York Under C.P.L.R. § 302(a)(1)**

To evaluate jurisdiction under C.P.L.R. § 302(a)(1), a court assesses "[i] whether the defendant 'transacts any business' in New York, and, if so, [ii] whether [the plaintiff's] cause of action 'arises from' such a business transaction."  *Best Van Lines, Inc.* v. *Walker,* 490 F.3d 239, 246 (2d Cir. 2007) (alteration adopted) (quoting C.P.L.R. § 302(a)(1)).  Notably, Section 302(a)(1) is a "single act statute": "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Chloé,* 616 F.3d at 170 (quoting *Kreutter* v. *McFadden Oil Corp.,* 71 N.Y.2d 460, 467 (1988)).

The first prong of this test, "transacts any business," requires the defendant to have undertaken a "purposeful activity" — that is, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Best Van Lines, Inc.,* 490 F.3d at 246 (quoting *McKee Elec. Co.* v. *Rauland-Borg Corp.,* 20 N.Y.2d 377, 382 (1967)).  To make this determination,

the court looks to the totality of the defendant's forum activities. *Id.* A defendant does not demonstrate purposeful availment where its contacts are "responsive in nature[.]" *Paterno* v. *Laser Spine Inst.*, 24 N.Y.3d 370, 378 (2014). Next, the second prong of the test is satisfied "when there exists an articulable nexus or a substantial relationship between [business] transactions occurring within the state and the cause of action sued upon." *Spetner* v. *Palestine Inv. Bank,* 70 F.4th 632, 643 (2d Cir. 2023) (quoting *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 23 (2d Cir. 2004)). Both prongs must be met for the court to exercise jurisdiction over a defendant under C.P.L.R. § 302(a)(1). *Johnson* v. *Ward,* 4 N.Y.3d 516, 519 (2005).

Taking the prongs in order, Defendant first argues that this Court lacks personal jurisdiction under Section 302(a)(1) because its business activities were responsive and thus insufficiently purposeful. (Def. Br. 15-18). The Court agrees.

Plaintiff has failed to allege that Defendant purposely availed itself of the New York market. To review, Plaintiff alleges that Defendant distributed stem cells bound for Ms. Aloisio "via its relationship with [ZKRD]," which then worked with NMDP to "collect[ ] and facilitat[e] [the] transplant[ ]." (Compl. ¶¶ 10-11). Further, Plaintiff lists fifteen additional shipments to New York hospitals, by way of ZKRD and NMDP, between 2017 and 2023. (*Id.* ¶¶ 11, 37-51). On these facts, Plaintiff asks this Court to find that it has jurisdiction over Defendant under Section 302(a)(1). This the Court cannot do.

Defendant's alleged contacts with New York were purely "responsive in nature[.]"  *Paterno*, 24 N.Y.3d at 378.  It did not "seek[ ] out and initiate[ ] contact with New York" or "solicit[ ] business in New York" on its "own initiative."  *Id.* at 377.  Instead, "this case presents the inverse of the type of business relationship that might establish personal jurisdiction in New York: rather than an out-of-state defendant seeking out business in New York, in-state plaintiffs sought out business outside of New York."  *Timothy Coffey Nursery Landscape Inc.* v. *Soave*, 760 F. App'x 58, 61 (2d Cir. 2019) (summary order).  Plaintiff alleges that Defendant shipped materials to New York only after a chain of interactions between donor registries, initiated by New York-Presbyterian Hospital/Weill Cornell Medical Center and the NMDP.  (Compl. ¶¶ 7, 11).  This conduct does not evince purposeful availment of the New York market.  *See, e.g., Etra* v. *Matta*, 61 N.Y.2d 455, 458-59 (1984) (per curiam) (finding medical shipments into New York did not confer jurisdiction under C.P.L.R. § 302(a)(1)).[6]

Even if Defendant transacted business in New York, Plaintiff's argument fails on the second prong because his cause of action does not arise from such transactions.  Indeed, Defendant asserts that it "did not ever possess, inspect,

---

[6]    The Court also finds persuasive, but not "binding" (Def. Br. 18), the First Department's identical fact-based conclusion against AKB subsidiary BSB in *Aloisio* v. *N.Y.-Presbyterian/Weill Cornell Medical Center*, 166 N.Y.S.3d 519, 519 (1st Dep't 2022). *Compare Paterno* v. *Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014) ("Whether a non-domiciliary is transacting business within the meaning of CPLR [§] 302(a)(1) is a *fact based* determination" (emphasis added)), *with Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) ("As a federal court applying state law, we are generally obliged to follow the state *law* decisions of state intermediate appellate courts." (emphasis added) (quoting *Pentech Int'l, Inc.* v. *Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993))).

touch, observe, or label any stem cell donations for Ms. Aloisio" or anyone else. (Holler Decl. ¶ 6(p); *see also* Compl. ¶ 9 (failing to adequately allege which entity was "responsible for collecting, labelling and preparing the stem cells … in the instant matter")).[7] As such, there is no requisite nexus for C.P.L.R. § 302(a)(1) to provide a basis for jurisdiction.

Plaintiff's arguments to the contrary are without merit. Plaintiff first asserts that AKB committed a "single act" sufficient to establish jurisdiction. (Pl. Opp. 14). However, Plaintiff acknowledges that the single act must still be "purposeful" (*see id.* (quoting *Kreutter*, 71 N.Y.2d at 467)); as just discussed, Defendant's acts here were not. Plaintiff's second argument — that the Court should find personal jurisdiction under the "effects test" — fails for the same reason. (*See id.* (noting the "effects test" assesses whether defendants purposefully directed activities towards forum state residents or purposely availed themselves of the forum state)). So does the third: Plaintiff argues that the Court has jurisdiction because Defendant has used "electronic and telephonic means to project [itself] into New York to conduct business transactions." (*See id.* at 14-15 (quoting *Deutsche Bank Sec., Inc.* v. *Mont. Bd.*

---

[7]  Plaintiff also argues that Defendant violated New York law by failing to obtain the requisite licensing for cryobank operators or distributors in New York. (Pl. Opp. 19-20). However, Plaintiff does not refute Defendant's assertion that it does not "harvest, handle," "store," or "possess" any stem cell donations. (Holler Decl. ¶ 6(p)). Therefore, this argument, which is unsupported by any legal authority, must also fail. *See MacDermid, Inc.*, 702 F.3d at 727 (noting allegations in the complaint must be taken as true to the extent they are uncontroverted by defendant's affidavits); *Dorchester Fin. Sec., Inc.*, 722 F.3d at 83, 86 (same).

13

*of Invs.*, 7 N.Y.3d 65, 71 (2006))).  But that is hardly the case; as explained, Defendant's contacts with New York were purely responsive.

Further, the facts alleged in this case demonstrate that "[i]t is no longer unusual or difficult, as it may once have been, … to obtain health care from an out-of-state provider."  *Paterno*, 24 N.Y.3d at 379.  The Court is mindful that exercising jurisdiction over Defendant here may "set a precedent for almost limitless jurisdiction over out-of-state medical providers," *id.*, contrary to legislative intent, *see Etra*, 61 N.Y.2d at 459 ("The Legislature, in enacting [C.P.L.R. § 302(a)(1)], was not concerned with limited provision of supplies incident to medical treatment as occurred in this case.").  As such, the Court takes seriously Defendant's policy argument that subjecting it to jurisdiction in this case may well force foreign donor registries to "rethink their cooperation with American stem cell requests."  (Def. Br. 18).

### 2. Plaintiff Has Failed to Sufficiently Allege That Defendant Committed Tortious Acts Within New York Under C.P.L.R. § 302(a)(2)

Plaintiff further posits that jurisdiction exists over Defendant under C.P.L.R. § 302(a)(2).  To satisfy Section 302(a)(2), a defendant must be physically present in New York when they perform the wrongful act.  *Bensusan Rest. Corp.* v. *King*, 126 F.3d 25, 28 (2d Cir. 1997).  However, the alleged wrongful act here — mislabeling — occurred in Germany.  (*See* Compl. ¶ 9 (stating AKB/BSB were responsible for labelling stem cells "for transport to New York" for Ms. Aloisio)).  Therefore, C.P.L.R. § 302(a)(2) does not provide a basis for jurisdiction.

### 3. Plaintiff Has Failed to Sufficiently Allege That Defendant Committed Tortious Acts Outside of New York That Caused Injury in New York Under C.P.L.R. § 302(a)(3)

Plaintiff's final proffered basis for personal jurisdiction is C.P.L.R. § 302(a)(3), which governs out-of-state torts. It provides in relevant part that courts have personal jurisdiction over an out-of-state defendant who

> commits a tortious act without the state causing injury to person or property within the state, … if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

C.P.L.R. § 302(a)(3)(ii). Plaintiff alleges that Defendant's activities are sufficient to confer jurisdiction under this provision. (Pl. Opp. 16-19). The provision requires five elements to be satisfied:

> *First*, that defendant committed a tortious act outside the State; *second,* that the cause of action arises from that act; *third,* that the act caused injury to a person or property within the State; *fourth,* that defendant expected or should reasonably have expected the act to have consequences in the State; and *fifth,* that defendant derived substantial revenue from interstate or international commerce.

*LaMarca* v. *Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000) (emphases added). Although Plaintiff has sufficiently pleaded the first four elements, he fails on the fifth.

Plaintiff clearly alleges the first three elements: AKB's alleged tort (mislabeling) was committed in Germany (Compl. ¶¶ 9, 12); Plaintiff's causes of action (based in negligence) arise from that act; and the act caused death to a New York resident (*id.* ¶¶ 28, 52).

15

Under the fourth element, Defendant argues that it did not expect nor reasonably should have expected its act to have consequences in New York because it does not control where a stem cell donation request comes from or is sent. (Def. Br. 13). However, a defendant "need only reasonably foresee that any defect in its product would have direct consequences within the State." *LaMarca*, 95 N.Y.2d at 215.[8] Here, Plaintiff has alleged that Defendant was aware that the shipment of stem cells was destined for New York and Ms. Aloisio. (Compl. ¶ 16). Defendant's awareness and expectation that New York medical professionals at a New York hospital would provide Ms. Aloisio with the

---

[8]    There is uncertainty as to whether C.P.L.R. § 302(a)(3)(ii) requires a showing of purposeful availment in addition to reasonable foreseeability. In *Kernan* v. *Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999), the Second Circuit found "foreseeability that a defendant's product will find its way into New York" insufficient, and "purposeful availment of the benefits of the laws of New York" necessary to exercise jurisdiction under New York's long-arm statute. *Id.* at 241 (internal quotation marks and citation omitted). After *Kernan*, however, the New York Court of Appeals decided *LaMarca*, and held that a "defendant need only reasonably foresee that any defect in its product would have direct consequences within the state." *LaMarca* v. *Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 215 (2000). The Second Circuit has questioned whether *LaMarca* effectively overruled *Kernan* but has not yet resolved the tension. *See Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 n.3 (2d Cir. 2002); *see also Zanotti* v. *Invention Submission Corp.*, No. 18 Civ. 5893 (NSR), 2020 WL 2857304, at *15 n.8 (S.D.N.Y. Jun. 2, 2020) (noting continued tension).

The Court need not decide the issue here because it finds that it lacks jurisdiction for at least two other, independent reasons: (i) Defendant did not derive substantial revenue from interstate or international commerce, and so cannot satisfy C.P.L.R. § 302(a)(3)(ii), and (ii) purposeful availment is necessary for an exercise of personal jurisdiction under the Due Process Clause, an inquiry Plaintiff fails. However, the Court notes that, in *LaMarca*, the Court of Appeals grounded part of its jurisdictional finding on the defendant's use of a New York distributor and representative, "suggest[ing] strongly that the Court of Appeals continues to consider purposeful availment an element of the interstate commerce analysis for long arm jurisdictional purposes." *Bissonnette* v. *Podlaski*, 138 F. Supp. 3d 616, 626 n.2 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). Moreover, the requirements of C.P.L.R. § 302(a)(3) are "more stringent than any constitutional requirement," *Ingraham*, 90 N.Y.2d at 597, suggesting that this Court should read a purposeful availment requirement into C.P.L.R. § 302(a)(3)(ii) to narrow its scope to more closely reflect the Due Process Clause. If C.P.L.R. § 302(a)(3)(ii) requires purposeful availment, the Court cannot exercise jurisdiction over Defendant for the other reasons discussed in this Opinion.

16

treatment it supplied is sufficient to find that Defendant expected or should have reasonably expected its act to have consequences in New York.  *See Ingraham* v. *Carroll*, 90 N.Y.2d 592, 598 (1997) (finding fourth element satisfied where physician treated patient in Vermont and "was aware that decedent … was receiving treatment from New York State primary physicians based … on his recommendations.").

However, Plaintiff has not adequately pleaded the fifth element of Section 302(a)(3)(ii) — that Defendant derives substantial revenue from interstate or international commerce.  This prong is designed to "narrow[ ] the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character."  *Id.* at 599 (internal quotation marks and citation omitted).  In other words, Section 302(a)(3)(ii) imposes a "bigness requirement designed to assure that the defendant is economically big enough to defend suit in New York."  *Id.* (internal quotation marks and citation omitted).  "Revenue from interstate and international commerce may be analyzed as a percentage of total revenues, or as an absolute number, but neither approach is binding and each case should be decided on its own facts." *Gucci Am., Inc.* v. *Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242 (S.D.N.Y. 2010).

Plaintiff argues that this case concerns "an ordinary transaction on the part of a sophisticated organization with a global reach[.]"  (Pl. Opp. 18). However, Plaintiff does not plead sufficient facts to demonstrate that Defendant

17

derived substantial revenue from interstate or international commerce.  While

Plaintiff does assert that "AKB/BSB received compensation in excess of

€30,000" for this transaction (Compl. ¶ 13), he does not allege from whom

Defendant received compensation, and does not refute Defendant's contention

that "AKB only receives remuneration from the ZKRD[.]"  (Holler Decl. ¶ 11; *see*

*also* Def. Br. 14).  This sparse allegation does not support a *prima facie*

showing of personal jurisdiction.  *See Ingraham*, 90 N.Y.2d at 599-600 (finding

no interstate business where physician's revenue, including from New York

patients, was provided in Vermont).

Even were the Court to find that the remuneration here was a result of

international commerce, Defendant still has not derived sufficient revenue for

this Court to exercise jurisdiction.  In absolute terms, €450,000 over a six-year

period (*see* Compl. ¶¶ 13, 37-51) may be insufficient, *see, e.g.*, *Barricade*

*Books, Inc.* v. *Langberg*, No. 95 Civ. 8906 (NRB), 2000 WL 1863764, at *6

(S.D.N.Y. Dec. 19, 2000) (finding interstate revenue of $110,000 per year "less

than many courts have held is necessary" to satisfy C.P.L.R. § 302(a)(3)(ii)).

And, where Plaintiff alleges only fifteen New York shipments amongst "several

thousand transplantations" (Compl. ¶¶ 8, 37-51), Defendant's business in this

forum relative to its total business weighs against exercising jurisdiction, *cf.*

*United Res. 1988-I Drilling & Completion Program, L.P.* v. *Avalon Expl., Inc.*,

No. 91 Civ. 8703 (RPP), 1994 WL 9676, at *4 (S.D.N.Y. Jan. 10, 1994)

(finding 5% of revenues from international sales to be "substantial income from

interstate commerce"); *Davey* v. *PK Benelux B.V.*, No. 20 Civ. 5726 (VB), 2022

WL 1289341, at *4 (S.D.N.Y. Apr. 29, 2022) (finding 0.00092% of total revenues from New York to be insufficient to sustain jurisdiction).[9]

## D.    In Any Event, This Court May Not Exercise Jurisdiction over AKB Consistent with Due Process

The due process analysis proceeds in two steps.  *First*, "[t]o exercise specific personal jurisdiction over a corporate defendant that is not incorporated in or primarily doing business in the State, a court must … determine that a corporate defendant's in-state acts reflect its 'purposeful availment' of opportunities within the State, and that the asserted claims arise out of or relate to its contacts with the State."  *Lelchook* v. *Société Générale de Banque au Liban S.A.L.*, 147 F.4th 226, 239 (2d Cir. 2025) (quoting *Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)).  *Second*, the court must find that "[t]he exercise of jurisdiction in the State as to the related claims over the defendant [is] reasonable — that is, consistent with traditional notions of fair play and substantial justice."  *Id.* (internal quotation marks and citation omitted).

### 1.    Defendant Has Not Established the Requisite Minimum Contacts with New York

Under the first step of this analysis, to have sufficient minimum contacts with a forum a defendant must "take 'some act by which [it] purposefully avails

---

9       As for additional revenues derived from business outside of New York, Plaintiff has only alleged that Defendant, as "a relatively large German entity … undoubtedly 'derives substantial revenue from interstate or international commerce.'" (Compl. ¶ 35 (quoting C.P.L.R. § 302(a)(3)(ii))).  This rumination is not enough to stave off a motion to dismiss. *See RV Skincare Brands LLC* v. *Digby Invs. Ltd.*, 394 F. Supp. 3d 376, 380 (S.D.N.Y. 2019).

19

itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co.*, 592 U.S. at 352 (quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958)).  A defendant must "foresee being haled into court" in New York, *Licci*, 732 F.3d at 170, which requires that it "deliberately 'reached out beyond' its home," *Ford Motor Co.*, 592 U.S. at 359 (quoting *Walden* v. *Fiore*, 571 U.S. 277, 285 (2014)).  Even then, the "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  *Id.* (quoting *Keeton* v. *Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

Defendant contends that it did not establish minimum contacts with New York because its limited activities were performed in Germany in response to ZKRD's requests.  (Def. Br. 20-22).  Indeed, Defendant has "no control over where in the world the stem cell donations are requested or ultimately implanted if a match is found."  (Holler Decl. ¶ 6(j)).  As here, where contacts are not of "defendant's own choice," but rather, are "random" or "fortuitous" based on where a particular donee is domiciled, jurisdiction is inappropriate under the Due Process Clause.  *See Ford Motor Co.*, 592 U.S. at 359.

Plaintiff's asserted claims must also "arise out of or relate to" Defendant's contacts with New York.  *Lelchook*, 147 F.4th at 239.  Personal jurisdiction requires a "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer* v. *Heitner*, 433 U.S. 186, 204 (1977)).

Defendant argues that Plaintiff's claims do not arise out of its forum contacts, but rather, from the mislabeling of stem cells in Germany.  (Def.

Br. 21). The Court agrees. There is no relationship between the forum and the litigation where Defendant never "possess[ed]" or "label[ed]" the stem cells at issue. (Holler Decl. ¶ 6(p)). Even if it did (*see* Compl. ¶ 9), that labeling would have occurred abroad. Further, while Defendant may have been aware that its product was bound for New York, "the fact that harm in the forum is foreseeable … is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674; *see also World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 296 (1980) ("If foreseeability were the criterion … [e]very seller of chattels would in effect appoint the chattel as his agent for service of process. His amenability to suit would travel with the chattel.").

### 2. Exercising Jurisdiction over Defendant in New York Would Not Comport with Traditional Notions of Fair Play and Substantial Justice

Whether the exercise of personal jurisdiction is reasonable under the Due Process Clause depends on five factors:

> [i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies.

*In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023) (quoting *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

21

New York certainly has an interest in adjudicating this case, which resulted in the tragic death of a New York resident. However, the remaining factors favor Defendant. Indeed, in this analysis, "the 'primary concern' is 'the burden on the defendant[,]'" *Bristol-Myers Squibb Co.* v. *Superior Court of Cal.*, 582 U.S. 255, 263 (2017) (quoting *World-Wide Volkswagen*, 444 U.S. at 292), which is significant here where a small German nonprofit with fewer than twenty-five employees would be subjected to discovery, depositions, and trial thousands of miles from home, (*see* Def. Br. 22-23 (advancing this argument)). This burden demands more weight than Plaintiff's interest in litigating in New York, where he does not reside. (Compl. ¶ 53 (Plaintiff resides in Toronto, Canada)). *See Asahi Metal Indus. Co.* v. *Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987) (expressing "an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State"). What is more, under the fifth factor, the Supreme Court has called for courts to "consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction" where the defendant is foreign. *Asahi*, 480 U.S. at 115. Therefore, exercising jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.

## E.    Jurisdictional Discovery Is Not Warranted

Plaintiff requests in the alternative that the Court grant him jurisdictional discovery. (Pl. Opp. 9-10). A court may "order limited discovery to establish personal jurisdiction so long as plaintiff has made a threshold

22

showing of jurisdiction and established that his jurisdictional position is not frivolous." *Newbro* v. *Freed*, No. 03 Civ. 10308 (PKC), 2004 WL 691392, at *3 (S.D.N.Y. Mar. 31, 2004).  But, in its discretion, the court may deny jurisdictional discovery where "the plaintiff ha[s] not made out a prima facie case for jurisdiction." *Best Van Lines*, 490 F.3d at 255.  A party seeking jurisdictional discovery bears the "burden of showing that the requested discovery is likely to produce the facts needed to establish jurisdiction." *Haber* v. *United States*, 823 F.3d 746, 750 (2d Cir. 2016).

Importantly here, Defendant has submitted an affidavit in support of its motion to dismiss, in which it states that it merely performs "confirmatory typing," and does not distribute or label stem cell donations.  (Holler Decl. ¶¶ 5, 6(h), (p)).  Defendant further claims that it does not receive remuneration from any entity except ZKRD.  (*Id.* ¶ 11).  On these uncontroverted facts, Plaintiff cannot establish jurisdiction under New York's long-arm statute or the federal Due Process Clause.  "[W]here, as here, the defendant submits an affidavit that provides all the necessary facts and answers all the questions regarding jurisdiction[,] … additional discovery would not uncover unknown facts or cure deficiencies in the Plaintiff's pleading," thus warranting denial of the request for jurisdictional discovery.  *Sullivan* v. *Jersey Strong Licensing LLC*, No. 18 Civ. 7753 (RA), 2019 WL 3066492, at *5 (S.D.N.Y. July 12, 2019) (quoting *A.W.L.I. Grp., Inc.* v. *Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 575 (E.D.N.Y. 2011)); *see also Ins. Corp. of Ir.* v. *Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 715 (1982) (Powell, J., concurring) ("A plaintiff is not entitled to discovery

23

to establish essentially speculative allegations necessary to personal jurisdiction.").

## CONCLUSION

While not seeking to minimize the loss suffered by Ms. Aloisio's family, the Court cannot create personal jurisdiction where none exists. For the foregoing reasons, Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) is GRANTED. The Complaint is dismissed without prejudice in light of the Court's lack of jurisdiction. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     June 17, 2026
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge